UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| THE MEDICAL PROTECTIVE COMPANY, | : | Case No. 1:14-cv-5 |
| | : | |
| | : | Judge Timothy S. Black |
| Plaintiff, | : | |
| | : | |
| vs. | : | |
| | : | |
| CENTER FOR ADVANCED SPINE TECHNOLOGIES, *et al.*, | : | |
| | : | |
| Defendants. | : | |

**ORDER CONDITIONALLY GRANTING PLAINTIFF'S MOTION
TO CERTIFY A DEFENDANT CLASS (Doc. 175) AND
CONDITIONALLY GRANTING DEFENDANT/CROSS-CLAIMANT
CINCINNATI INSURANCE COMPANY'S MOTION
TO CERTIFY A DEFENDANT CLASS (Doc. 192)**

This civil action is before the Court on Plaintiff Medical Protective Company's

motion to certify a defendant class (Doc. 175), Defendant/Cross-Claimant Cincinnati

Insurance Company's motion to certify a defendant class (Doc. 192), and the parties'

responsive memoranda (Docs. 202, 203, 204, 205, and 206).

## I. FACTS AS ALLEGED IN THE COMPLAINT AND CROSSCLAIM

For purposes of a motion for class certification, the Court accepts allegations in

the complaint as true. *Bentley v. Honeywell Intl., Inc.*, 223 F.R.D. 471, 476 (S.D. Ohio

2004). The following facts are taken from Plaintiff Medical Protective Company's third

amended complaint (Doc. 174) and Defendant/Cross-Claimant Cincinnati Insurance

Company's amended crossclaim (Doc. 193).[1]

Defendant Abubakar Atiq Durrani, M.D. ("Dr. Durrani") was the president, chief executive officer, and sole shareholder of Defendant Center for Advanced Spine Technologies, Inc. ("CAST"). (Doc. 174 at ¶ 2). Plaintiff Medical Protective Company ("MPC") issued insurance policies to Dr. Durrani and CAST ("MPC Policies").[2] As a condition precedent to coverage under the MPC policies, the insured is required to "at all times fully cooperate with the Company in any claim hereunder and . . . attend and assist in the preparation and trial of any such claim." (*Id.* at ¶ 54).

Defendant/Cross-Claimant Cincinnati Insurance Company ("CIC") issued general liability insurance policies to CAST ("CIC Policies").[3] The CIC policies provide:

> You and any other involved insured must:

---

[1] On June 16, 2015, Defendant/Cross-Claimant Cincinnati Insurance Company filed a second amended crossclaim (Doc. 209), in which claims against "Underlying Plaintiffs" were excluded. The parties agreed that the filing of the second amended crossclaim would not impact the instant motions for class certification. (*See* May 1, 2015 Notation Order). Herein, the Court references the amended crossclaim (Doc. 193), which was the operative crossclaim at the time the parties briefed the instant motions.

[2] MPC issued Policy No. 696241 to Dr. Durrani, effective January 1, 2009 to January 1, 2010. The policy was renewed on an annual basis through December 31, 2013; the policies in effect from January 1, 2009 to December 31, 2010 had limits of $1 million for "one occurrence" and $3 million in the aggregate, and the policies in effect from January 1, 2011 to December 31, 2013 had limits of $5 million for "one occurrence" and $7 million in the aggregate. (Doc. 174 at ¶¶ 19–20). MPC issued Policy No. C50325 to CAST, effective January 1, 2009 to January 1, 2010. The policy was renewed on an annual basis through December 31, 2013; the policies had limits of $1 million for "one occurrence" and $3 million in the aggregate. (*Id.* at ¶¶ 21–22).

[3] CIC issued Businessowners Package Policy No. EBP0034601 to CAST, effective January 15, 2009 to January 15, 2012. (Doc 193 at ¶ 14). This policy was renewed, with effective dates of January 15, 2012 to January 15, 2015. (*Id.* at ¶ 15). The renewal policy was cancelled, effective February 3, 2014. (*Id.*)

1. Immediately send us copies of any demands, notices, summonses or
   legal papers received in connection with the claim or "suit";

2. Authorize us to obtain records or other information;

3. Cooperate with us in the investigation or settlement of the claim or
   defense against the "suit"; and

4. Assist us, upon our request, in the enforcement of any right against any
   person or organization which may be liable to the insured because of
   injury or damage to which this insurance may also apply.

(Doc. 193 at ¶ 16).

In 2013, a federal grand jury indicted Dr. Durrani on a number of counts of

criminal behavior.[4]  Subsequently, Dr. Durrani fled the United States for Pakistan.

(Doc. 174 at ¶ 28).

On December 19, 2013, MPC advised Dr. Durrani by letter that it had learned that

he had fled the United States and would not be in attendance at trial in the Pierce

Litigation.  (*Id.* at ¶ 30).[5]  In the same letter, MPC also advised Dr. Durrani of his duties

to cooperate and to attend and assist in the preparation and trial in the Pierce Litigation,

and informed him that if he did not fulfill these duties, the chances of a defense verdict

---

[4] In an August 2013 indictment, the grand jury charged Dr. Durrani with five counts of making
false statements relating to health care matters  in violation of 18 U.S.C. § 1035 and five counts
of health care fraud in violation of 18 U.S.C. § 1347.  (Doc. 174 at ¶¶ 24–25).  In an October
2013 superseding indictment, the grand jury charged Dr. Durrani with 11 counts of making false
statements relating to health care matters in violation of 18 U.S.C. § 1035, 12 counts of health
care fraud  in violation of 18 U.S.C. § 1347, 12 counts of illegally dispensing a controlled
substance in violation of 18 U.S.C. § 841(a)(1) and (b)(1)(C), and one count of devising a
scheme to defraud healthcare benefits programs in violation of  18 U.S.C. § 1341.  (*Id.* at ¶¶ 26–
27.)

[5] Defendant Crystal Pierce brought a civil action against Dr. Durrani and CAST, captioned
*Crystal Pierce v. Abubakar Atiq Durrani, M.D., et al.*, Case No. A1200265, Court of Common
Pleas for Hamilton County, Ohio ("Pierce Litigation").  (Doc. 174 at ¶ 4).

would be significantly reduced and he would be in breach of the duties owed under the MPC Policies. (*Id.* at ¶¶ 30–31).

On December 23, 2013, Dr. Durrani advised MPC via e-mail as follows: "I will not be able to return back to the US and unfortunately will not be able to assist in any way in defense of these civil cases." (Doc. 174 at ¶¶ 32–33).[6] Since sending this e-mail, Dr. Durrani has not cooperated with MPC with respect to the Underlying Litigation and has neither attended nor assisted in preparation and trial of the Underlying Litigation. (*Id.* at ¶ 34).[7]

Reportedly, as of November 19, 2014, c. 405 civil lawsuits had been filed against Dr. Durrani, CAST, and others. (*See* Doc. 173; Doc. 174 at ¶ 17). In these lawsuits, the plaintiffs allege causes of action such as battery, lack of informed consent, negligence, negligent supervision, fraud, intentional infliction of emotional distress, loss of consortium, violation of the Safe Medical Devices Act, violation of the Ohio Consumer Sales Protection Act, violations of federal and state RICO statutes, unjust enrichment, and spoliation of evidence. (Doc. 174 at ¶ 17). In accordance with the provisions of the

---

[6] On March 12, 2014, Dr. Durrani's license to practice medicine in Ohio was permanently revoked by the State Medical Board based on findings that Dr. Durrani had: (1) pre-signed blank prescriptions to enable his employees (who were not legally authorized to prescribe) to issue prescriptions for dangerous drugs and controlled substances while Dr. Durrani was outside of the United States; and (2) failed to cooperate in an investigation by the Board. (Doc. 174 at ¶ 36). On April 22, 2014, Dr. Durrani's license to practice medicine in Kentucky was revoked by the Board of Medical Licensure based on his indictment. (*Id.* at ¶ 37).

[7] Throughout this Order, "Underlying Litigation" means the lawsuits set forth in the list attached as Exhibit 1 to the parties' stipulation, which may be amended as needed from time to time. (*See* Docs. 173, 174-2).

MPC Policies, MPC has provided a defense, subject to reservation of rights, to Dr.

Durrani and CAST in the Underlying Litigation.  (*Id.* at ¶ 23).[8]

On January 6, 2014, the Pierce Litigation proceeded to trial.  (Doc. 174 at ¶ 35).

Although Dr. Durrani was *in abstentia*, his deposition testimony was read to the jury.

(*Id.*)  On January 15, 2014, the jury returned a verdict for Pierce, awarding her

compensatory damages of $540,000 and punitive damages of $500,000.  (*Id.*)

---

[8] As of December 2013, Dr. Durrani and CAST had tendered lawsuits to their malpractice insurance carriers, mainly MPC, rather than to CIC.  (Doc. 193 at ¶ 20).  CIC had no knowledge of the Underlying Litigation until December 9, 2013, when it received a letter from counsel retained by MPC to represent the interests of Dr. Durrani and CAST.  (*Id.* at ¶ 21).  The letter stated, in part, as follows:

> Currently there are approximately 140 lawsuits pending against Dr. Durrani and CAST . . . . we enclose herewith one of the more recently filed lawsuits—*Robert Ellington v. Abubaker Atiq Durrani, MD., et al.*—for your reference . . .

> [T]his office has entered an appearance on behalf of CAST and Dr. Durrani in most, but not all of these cases pursuant to coverage provided to him by Medical Protective Company.  Some of the cases against Dr. Durrani involve claims that arose before he was insured by Medical Protective and, hence, his defense is being provided by others.

> In light of the allegations in all of these Complaints, and the coverage provided pursuant to your Businessowners Package Policy, demand is hereby made upon you for defense and indemnity of Center for Advanced Spine Technologies, Inc. and Dr. Durrani.

(*Id.*)  Neither Dr. Durrani nor any CAST employee has personally requested that CIC provide defense or indemnity with respect to the Underlying Litigation.  (*Id.*)  Because CIC's investigation suggested that neither MPC nor counsel retained by MPC to represent Dr. Durrani had any contact with Dr. Durrani or CAST regarding tenders of defense and indemnity to CIC, CIC asked counsel to provide an affirmative representation that Dr. Durrani or CAST directed counsel to tender the defense and indemnity demand to CIC.  (*Id.* at ¶ 23).  To date, CIC has not received a response to its request.  (*Id.* at ¶ 24).

On July 9, 2014, the Hamilton County Court of Common Pleas entered an order in the Beil Litigation.[9] Therein, the court declined to enter default judgment on liability, causation, and damages against Dr. Durrani and CAST because of the potential adverse effect it would have on codefendants West Chester Hospital, LLC and UC Health, but ruled that it would "go on the record at trial to explain to the Jury that Dr. Durrani has fled the country and will determine, at trial, whether there are more appropriate sanctions against Dr. Durrani, depending on his level of cooperation in the future, if any." (Doc. 174 at ¶¶ 38–39).

On August 7, 2014, the Butler County Court of Common Pleas ruled on a "Civ. R. 37 Motion" filed in 98 of the cases included in the Underlying Litigation. (Doc. 174 at ¶¶ 40–41). The court held:

> Because Dr. Durrani has refused to be disposed [*sic*] in the within cases, the Court orders that he will not be allowed to testify at the trial of these cases. For the reasons stated on the record by the Court, the plaintiffs' motion is otherwise denied without prejudice to the individual plaintiffs requesting appropriate sanctions prior to each plaintiff's trail [*sic*].

(*Id.*)

On August 11, 2014, the Shell Litigation proceeded to trial.[10] Although Dr. Durrani was *in abstentia*, his deposition testimony was read to the jury. The jury returned a defense verdict. (Doc. 174 at ¶ 42).

---

[9] Defendants Cathy and Wayne Beil brought a civil action against Dr. Durrani, CAST, West Chester Hospital, LLC, and UC Health, which is currently pending, captioned *Cathy Beil, et al. v. Abubakar Atiq Durrani, M.D., et al.*, Case No. A1302781, Court of Common Pleas for Hamilton County, Ohio ("Beil Litigation"). (Doc. 174 at ¶ 6).

[10] Brenda Shell brought a civil action captioned *Brenda Shell v. Abubakar Atiq Durrani, M.D., et al.*, Case No. CV 2012 08 2824, Court of Common Pleas for Butler County, Ohio ("Shell Litigation"). (*See* Doc. 174 at ¶ 42).

Except in a few of the remaining cases included in the Underlying Litigation, Dr. Durrani has not given deposition testimony, forcing MPC to defend Dr. Durrani and CAST without their cooperation, attendance, assistance, or testimony in preparation for and trial of the Underlying Litigation.  (Doc. 174 at ¶ 43).

In this litigation, MPC ultimately seeks a declaration that it has no duty to defend or indemnify Dr. Durrani or CAST in the Underlying Litigation under the MPC Policies, and that it has no liability to any person or legal entity who has, has had, or may have any claim, cause of action, or judgment against Dr. Durrani, CAST, or MPC in or in connection with the Underlying Litigation.  (Doc. 174 at ¶¶ 57–58).  CIC ultimately seeks a declaration that: (1) Dr. Durrani and CAST breached their duties to cooperate in CIC's investigation of the claims asserted in the Underlying Litigation and in the defense of the lawsuits included as part of the Underlying Litigation; (2) CIC has been, and in the future will be, prejudiced by Dr. Durrani and CAST's failure to cooperate with CIC in its investigation of the claims asserted in the Underlying Litigation; and (3) as a result of Dr. Durrani and CAST's continuing and anticipated breach of their duties to cooperate, CIC has no obligation to defend or indemnify Dr. Durrani or CAST and has no other obligations with respect to any of the claims or suits included as part of the Underlying Litigation.  (Doc. 192 at ¶ 80).

In the instant motions, MPC and CIC ("Movants") ask the Court to certify defendant classes.  (Docs. 175, 192).  Defendants Kelly Ann LeMaster, Good Samaritan Hospital, Christ Hospital, Inc., West Chester Hospital, LLC, UC Health, Inc., Deaconess Hospital, Crystal Pierce, Cathy Biel, Wayne Biel, Joann Frazier, and Bill Frazier

("Defendants"), named individually and as class representatives, oppose the motions. (Docs. 202, 204).[11]

## II.    STANDARD OF REVIEW

"Class certification is governed by Federal Rule of Civil Procedure 23." *Wal–Mart Stores, Inc. v. Dukes*, ––– U.S. ––––, 131 S.Ct. 2541, 2548 (2011). Rule 23 permits certification of defendant class actions as well as plaintiff class actions. *Alexander Grant & Co. v. McAlister*, 116 F.R.D. 583, 585 (S.D. Ohio 1987). A "trial court has broad discretion in deciding whether to certify a class, but that discretion must be exercised within the framework of Rule 23." *In re American Medical Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996); *see also Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 946 (6th Cir. 2011).

First, the Court considers whether a precisely defined class exists and whether the named class representatives are members of the putative class. *See Bentley v. Honeywell Intl., Inc.*, 223 F.R.D. 471, 476 (S.D. Ohio 2004). Then the Court conducts a "rigorous analysis" into whether the party seeking to certify a class satisfies "two sets of requirements: (1) each of the four prerequisites under Rule 23(a), and (2) the prerequisites of one of the three types of class actions provided for by Rule 23(b). A failure on either front dooms the class." *Pilgrim*, 660 F.3d at 946; *see also In re American Medical Sys.*, 75 F.3d at 1079. The Court makes reasonable inferences from the facts before it. *Bentley*, 223 F.R.D. at 477. The Court's rigorous analysis "will entail

---

[11] The Court notes that Defendant Cincinnati Children's Hospital Medical Center, named individually and as a class representative, takes no position as to the instant motions. (Doc. 203).

some overlap with the merits of the plaintiff's underlying claim. That cannot be helped." *Dukes*, 131 S.Ct. at 2552.

The party seeking class certification bears the burden of demonstrating that all prerequisites for class certification have been satisfied. *In re American Medical Sys.*, 75 F.3d at 1079. "Given the huge amount of judicial resources expended by class actions, particular care in their issuance is required." *Pipefitters Local 636 Ins. Fund v. Blue Cross Blue Shield of Michigan*, 654 F.3d 618, 630 (6th Cir. 2011).

### III.    ANALYSIS

#### A. Class Definition[12]

"Before a court may certify a class pursuant to Rule 23, the class definition must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 537–38 (6th Cir. 2012) (internal quotation marks omitted). Though not an express requirement of Rule 23, "ascertainability goes to whether the class has been defined such that it encompasses an identifiable group." *Stuart v. Cheek & Zeehandelar*, 252 F.R.D. 387, 391 (S.D. Ohio 2008). The "touchstone of ascertainability is whether the class is objectively defined, so that it does not implicate the merits of the case or call for individualized assessments to determine class membership." *Id.*

---

[12] In Section III.C, *infra*, the Court certifies the defendant classes pursuant to Rule 23(b)(2). The ascertainability requirement is more flexible for this type of class. *See Stewart v. Zeehandlelar*, 252 F.R.D. 387, 391–92 (S.D. Ohio 2008).

MPC seeks to certify the following as a defendant class:

Any "person" or "legal entity" who has, has had, or may have any "claim, cause of action, or judgment" against Durrani, CAST, or Medical Protective in or in connection with the "Underlying Litigation" where Durrani and CAST failed to at all times fully cooperate with Medical Protective and to attend and assist in the preparation and trial of such Underlying Litigation.

(Doc. 175 at 1).[13]

CIC seeks to certify the following as a defendant class:

Any Person or Legal Entity who has, or has had, any claim, cause of action, or judgment against Durrani, CAST, or CIC in or in connection with the Underlying Litigation.

(Doc. 192 at 1).[14]

---

[13] For the purposes of this definition: "person" means any patient of Durrani or CAST from January 1, 2009 until December 31, 2013 ("Medical Protective Policy Periods"), and such patient's heirs, executors, administrators, personal representatives, successors, assigns, next friends, and all those entitled to seek, take, or receive relief from or through such patient, whether legally, equitably, or otherwise; "legal entity" means any entity recognized at law, that has, has had, or may in the future have a claim, cross-claim, or third-party complaint against Durrani or CAST and any insurance carrier of Durrani or CAST arising out of their care or treatment of any Person as defined herein, including but not limited to hospitals, pharmaceutical companies, or medical device companies who supplied products used by Durrani in treating Persons during the Medical Protective Policy Periods and all those entitled to seek, take or receive relief from or through such entity, whether legally, equitably, or otherwise; "claim, cause of action, or judgment" includes but is not limited to any claim, cause of action, or judgment that any Person or Legal Entity pursues, or in the future seeks to pursue, against Medical Protective under Ohio Revised Code ("O.R.C.") §3929.06.  (Doc. 175 at 1–2).  The meaning of "underlying litigation" is set forth in note 7, *supra*.

[14] For the purposes of this definition:  "Person" means any patient of Durrani or CAST from January 15, 2009 until February 3, 2013 and such patient's heirs, executors, administrators, personal representatives, successors, assigns, next friends, and all those entitled to seek, take, or receive relief from or through such patient, whether legally, equitably, or otherwise;  "Legal Entity" means any entity recognized at law, that has, has had, or may have a claim, cross-claim, or third-party complaint against Durrani or CAST arising out of their care or treatment of any Person as defined herein, including but not limited to hospitals, pharmaceutical companies, or medical device companies who supplied products used by Durrani in treating Persons during from January 15, 2009 and February 3, 2013, and all those entitled to seek, take or receive relief from or through such entity, whether legally, equitably, or otherwise.  (Doc. 192 at 1).

The parties have stipulated that MPC may amend the list of lawsuits identified as "Underlying Litigation" as needed. (Doc. 173 at 2). While this creates the potential for subsequent inclusion or exclusion of members of the putative class, the Sixth Circuit has concluded that "the class does not have to be so ascertainable that every potential member can be identified at the commencement of the action." *Bremiller v. Cleveland Psychiatric Inst.*, 898 F. Supp. 572, 576 (N.D. Ohio 1995) (referencing *Senter v. General Motors Corporation,* 532 F.2d 511 (6th Cir. 1976)).

"[D]istrict courts have broad discretion to modify class definitions." *Powers v. Hamilton Cnty. Pub. Defender Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007). Here, the phrase "where Durrani and CAST failed to at all times fully cooperate with Medical Protective and to attend and assist in the preparation and trial of such Underlying Litigation," included in MPC's proposed class definition, causes the Court pause. The phrase could be read to stand for a finding on the merits that Dr. Durrani and CAST failed to cooperate in the cases identified as "Underlying Litigation." Accordingly, the Court **STRIKES** that phrase from MPC's proposed class definition. *See* Section IV, *infra*.

With the Court's amendment, the proposed class definitions do not hinge on the individual merits of claims brought by class members or call for individualized assessments as to class membership. Instead, membership is based on objective, readily ascertainable factors, related to the activities of the class members, *i.e.* whether a person or legal entity has asserted, or may assert, a claim or cause of action against Dr. Durrani, CAST, MPC, or CIC in or in connection with the Underlying Litigation. The Court can

ascertain class members without delving into individual, fact-specific issues. Accordingly, the proposed class definitions, as amended herein, are not an impediment to certification.[15]

## B. Rule 23(a)

A district court may certify a class only if:

(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).[16]

### 1. Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." While the numerosity requirement is not tied to any fixed numerical threshold, "substantial" numbers usually satisfy this requirement. *Daffin v. Ford Motor Co.,* 458 F.3d 549, 552 (6th Cir. 2006). The movants are not required to "establish that it

---

[15] Defendants do not contest that the named class representatives are members of the putative classes.

[16] The Supreme Court has explained:

[t]he commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence. Those requirements therefore also tend to merge with the adequacy-of-representation requirement, although the latter requirement also raises concerns about the competency of class counsel and conflicts of interest.

*General Telephone Co. of Southwest v. Falcon,* 457 U.S. 147, 157–158, n. 13 (1982).

is impossible to join all members of the proposed class[,]" but simply that joinder "would be difficult and inconvenient." *Day v. NLO*, 144 F.R.D. 330, 333 (S.D. Ohio 1992).

There are over 400 pending lawsuits against Dr. Durrani and CAST, and new cases will continue to be filed. (*See* Doc. 174 at ¶ 17). Given the sheer number of parties with claims against Dr. Durrani and CAST in the Underlying Litigation, it would be difficult to join each member of the putative classes. For these reasons, the demonstrated class sizes satisfy the numerosity requirement of Rule 23(a)(1).

## 2.    Commonality

Rule 23(a)(2) is satisfied where there are "questions of law or fact common to the class," an element known as "commonality." The claims and anticipated defenses "must depend upon a common contention" and that contention "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 131 S.Ct. at 2551. "[F]or purposes of Rule 23(a)(2) [e]ven a single [common] question will do." *Id.* at 2556. However, "[w]hat matters to class certification . . . is not the raising of common 'questions'—even in droves—but rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Id.* at 2251.

To determine whether a class-wide proceeding could generate such answers, the Court considers the nature of Movants' claims and the putative class members' defenses. Movants allege that Dr. Durrani and CAST have breached or anticipatorily breached their duties to cooperate, so Movants need not defend or indemnify Dr. Durrani and CAST.

"When . . . cooperation is a policy condition, and an insured fails to comply, the insurer may be relieved of further obligation with respect to a claim with which the insured did not cooperate." *Gabor v. State Farm Mut. Auto. Ins. Co.,* 66 Ohio App.3d 141, 143, 583 N.E.2d 1041 (8th Dist. 1990) (citations omitted).  To avoid liability to the policyholder, the insurer must establish that the failure to cooperate was material and substantial and that it resulted in prejudice to the insurer's rights. *Templin v. Grange Mut. Cas. Co.,* 81 Ohio App.3d 572, 576, 611 N.E.2d 944 (2d Dist. 1992) (citing *State Farm Mut. Auto. Ins. Co. v. Holcomb,* 9 Ohio App.3d 79, 81–82, 458 N.E.2d 441 (9th Dist. 1983)).

Failure to comply with policy conditions is an affirmative defense, on which the insurer bears the burden of proof.  *Ermakora v. Daillakis,* 90 Ohio App. 453, 463, 107 N.E.2d 392 (8th Dist. 1951).  Whether an insured violated the cooperation clause is determined in light of the facts and circumstances of the case, but may be decided by the court as a matter of law when the case presents undisputed facts. *Weller*, 125 Ohio App.3d at 274.

The relevant inquiry is not whether a case is indefensible, even if the insured had cooperated. *Luntz v. Stern*, 135 Ohio St. 225, 225, 20 N.E.2d 241, 241 (1939).  Instead, prejudice involves a "material injury to the insurer's ability to contest the merits of the case, or serious impairment in investigating the claim or defending the merits of the case." *Weller v. Farris*, 125 Ohio App.3d 270, 276, 708 N.E.2d 271 (2d Dist. 1998) (citations omitted).

Here, Movants' obligations, if any, to the putative class members will be determined by the same key contractual provisions. Moreover, whether Dr. Durrani and CAST satisfied the policies' cooperation requirements will be based on their same conduct, namely Dr. Durrani's refusal to participate in the defense of the Underlying Litigation.[17]

In *Pharmacists Mutual Insurance Company v. Courtney*, No. 4:02-cv-00242-ODS (W.D. Mo. Feb. 11, 2003),[18] the court found that a plaintiff insurer satisfied the commonality requirement in a case where it sought relief against a defendant class. The insurer—like Movants—sought a declaratory judgment regarding its duty to defend and indemnify its insured. The court found that common questions were inherent in the policies: "[T]he meaning of the policies' exclusions and their application to [the insured's] conduct are common questions (or applications) of law." *Id.* at 7; *see also Makastchian v. Oxford Health Plans, Inc.*, 704 N.Y.S.2d 44, 45 (N.Y. App. Div. 2000) (certifying class action where plaintiffs sought declaratory relief regarding insurer's obligations under a policy). Here, as in *Courtney,* the issue is whether Movants owe Dr. Durrani or CAST any duty to defend or indemnify. As the policy language and conduct at issue is the same, the answers to these questions will resolve common issues.

---

[17] The Court notes that in at least the Pierce Litigation and a handful of other cases, Dr. Durrani has provided deposition testimony. (Doc. 173 at ¶¶ 35, 43). However, in many instances, trial courts have already barred Dr. Durrani from testifying. (Doc. 174 at ¶¶ 40–41). Defendants note that (1) under the corporate form, CAST is presumed to act as a separate legal entity apart from its shareholders or employees; (2) Ohio law allows a court to appoint a receiver to act on behalf of CAST; and (3) such a receiver may cooperate with the insurers in defense of the tort actions. Given the close relationship between Dr. Durrani and CAST, whether a receiver could provide any testimony or information helpful to the defense is an open question.

[18] A copy of this Order can be found at Doc. 155-1.

At this juncture, the Court need not determine whether the issue of prejudice can be resolved on a class-wide basis.  Even assuming that prejudice must be resolved on an individual basis, the Court finds that Movants have carried their burden to demonstrate that this litigation presents common questions that should be resolved uniformly for all putative class members.[19]

### 3.     Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  A putative class representative's claim or defense is typical if it "arises from the same event or practice or course of conduct that gives rise to the claims [or defenses] of other class members, and if his or her claims [or defenses] are based on the same legal theory."  *In re Am. Med. Sys., Inc.,* 75 F.3d 1069, 1082 (6th Cir. 1996) (citation omitted).  The claims or defenses need not be identical. *Taylor v. CSX Transp., Inc.*, 264 F.R.D. 281, 289 (N.D. Ohio 2007).  Typicality requires a demonstration that the other members of the class are in a similar position as the class representatives, such that "as goes the claim [or defense] of the [class representative], so go the claims [or defenses] of the class." *Bentley*, 223 F.R.D. at 482 (quoting *Sprague v. General Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998)).

---

[19] To the extent that Defendants argue that CIC has not provided evidence that it has attempted to communicate with Dr. Durrani or CAST, the Court notes that Dr. Durrani has already stated that he will not participate in the defense of the Underlying Litigation.  (Doc. 174 at ¶¶ 32–33). Where an insured unequivocally states that it will not appear in an action, any additional requests for information or assistance may be meaningless.  *See, e.g.*, *Consolidated Stores Intern. Corp. v. London Ins. & Reins Mkt. Assoc.*, No. C2-96-1047, 2001 WL 1681139, at *6 (S.D. Ohio Oct. 24, 2001).

In the defendant class context, courts have found typicality where there is a common contract at issue, reasoning that "the similarity of the contractual forms . . . is, in the Court's view, a significant factor favoring a finding of typicality." *In re Arthur Treacher's Franchise Litigation*, 93 F.R.D. 590, 596-97 (E.D. Pa. 1982). Here, the policy provisions at issue are the same for all putative class members. Further, the putative class representatives' interests are typical of those of the class: to defend against declarations that Movants are not obligated to provide defense or indemnity to Dr. Durrani or CAST with respect to the Underlying Litigation. That putative class members assert different facts and legal theories in the Underling Litigation does not defeat this typicality. Accordingly, Movants have carried their burden as to the typicality requirement.

### 4.     Adequacy of Representatives

Rule 23(a)(4) requires the Court to determine whether "the representative parties will fairly and adequately protect the interests of the class." This requirement calls for a two pronged inquiry: "(1) the representatives must have common interests with unnamed members of the class, and (2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Senter v. General Motors Corp.,* 532 F.2d 511, 525 (6th Cir. 1976). Rule 23(a)(4) tests "the experience and ability of counsel for [the class representatives] and whether there is any antagonism between the interests of the [class representatives] and other members of the class they seek to represent." *Cross v. Nat'l Trust Life Ins. Co.,* 553 F.2d 1026, 1031 (6th Cir. 1977). "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between

named parties and the class they seek to represent." *Gooch v. Life Investors Ins. Co. of Am.*, 672 F.3d 402, 429 (6th Cir. 2012) (quoting *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 625 (1997)).

Where parties seek to certify a defendant class, the Court is confronted with the "strange situation where one side picks generals for the other side's army." NEWBERG ON CLASS ACTIONS § 5:11 (5th ed.) (internal quotation marks and citation omitted). However, "the fact that the named representatives are reluctant does not necessitate the denial of class certification if the court finds that they have the incentive and ability to protect the entire class effectively." 7A Wright, Miller & Kane, Federal Practice & Procedure: Civil 2d § 1770 (1986).

Some of the proposed class representatives are adversaries in the Underlying Litigation. However, their interests are aligned for the purposes of this litigation because all members of the class share the same unified interest in seeking to establish that Movants are obligated to defend and indemnify Dr. Durrani and CAST. Put another way, *all* class members have an interest in having Movants' funds available to pay judgments entered against Dr. Durrani and CAST. Further, the putative class representatives have retained experienced counsel who will fairly, adequately, and vigorously defend the interests of the putative defendant classes. Counsel are familiar with the Underlying Litigation and the issues presented therein. For the foregoing reasons, the Court finds that the putative classes' representation is adequate.

## C. Rule 23(b)

When the prerequisites of Rule 23(a) are satisfied, a class action may be maintained when it satisfies any one of three conditions set forth in Rule 23(b).  Rule 23(b)(2) sets forth one of these conditions: "[a] class action may be maintained . . . if the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  "The key to the (b)(2) class is "the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or to none of them."'  *Wal–Mart,* 131 S.Ct. at 2557 (quoting Nagareda, 84 N.Y.U. L. Rev. at 132).  "Rule 23(b)(2) class actions are mandatory class actions, in that class members are given no opportunity to opt out of the action."  *Austin v. Wilkinson*, 83 F. App'x 24, 25 (6th Cir. 2003) (*citing Coleman v. Gen. Motors Acceptance Corp.,* 296 F.3d 443, 447 (6th Cir. 2002)) (emphasis supplied).

Here, the parties opposing the class, Movants, have acted on grounds that apply generally to the class.  Specifically, MPC has provided a defense, subject to a reservation of rights, to Dr. Durrani and CAST in the Underlying Litigation, and CIC has not, to date, accepted any insurance claims from Dr. Durrani or CAST.  The Movants now seek declarations that they have no duty to defend or indemnify Dr. Durrani or CAST as to the Underlying Litigation, in which the putative class members are participants.

In *Courtney*, 4:02-CV-00242-ODS (W.D. Mo. Feb. 11, 2003), the court granted plaintiff's request for certification of a defendant class pursuant to Rule 23(b)(2).  The

court in *Courtney* recognized that a number of other courts had refused to certify defendant classes under Rule 23(b)(2) because certification could yield "the anomalous situation in which the plaintiff's own actions or inactions could make injunctive relief against the defendant appropriate."[20]   However, the court found that the case before it— in which the insurer sought to certify a defendant class for the purpose of seeking declaratory relief regarding its coverage obligations—was an exception to the general rule because (1) it was a declaratory judgment suit; and (2) the traditional roles of plaintiff and defendant were reversed, as the case posited "the customers' [class members] attempts to recover money from Plaintiff [insurance company] and addresse[d] Plaintiff's [insurance company's] defense to those efforts."  *Courtney,* 4:02-CV-00242-ODS, at p. 12; *see also Henson v. East Lincoln Township*, 814 F.2d 410, 414 (7th Cir. 1987) (indicating that Rule 23(b)(2)'s prohibition on defendant class actions may not apply when a plaintiff seeks a declaration of non-liability to a defendant class).

Like the insurer in *Courtney*, Movants seek declarations that they have no duty to defend or indemnify their insureds.  Thus, although technically Plaintiff and Cross-Claimant, Movants are actually situated more like traditional defendants because the issue in this case is essentially the validity of class members' potential claims against Movants for indemnification of Dr. Durrani and CAST.  Moreover, there is no risk that MPC or CIC can control the outcome of this action by their own conduct; instead, the

---

[20] The Sixth Circuit expressed this concern in *Thompson v. Board of Education*, 709 F.2d 1200, 1203–04 (6th Cir. 1983).  Even there, the Sixth Circuit recognized that Rule 23(b)(2) certification of a defendant class may be appropriate in cases involving application of a uniform statute or common policy.  *Id.* at 1204.  The Court finds that *Thompson* does not control its inquiry for the reasons articulated in *Courtney.*

Court will ultimately be tasked with determining whether Movants are obligated to defend and indemnify Dr. Durrani and CAST, given the relevant policy language and the facts presented. Under these circumstances, Rule 23(b)(2) certification is proper.[21]

Defendants oppose certification on the ground that the putative classes lack cohesiveness, because the claims at issue in the Underlying Litigation, and the facts giving rise to those claims, vary. However, unlike the cases cited by Defendants, where claimants sought to certify classes for medical monitoring and personal injuries, the instant case is one brought for declaratory judgment. A class is sufficiently cohesive under Rule 23(b)(2) where the case will not depend on adjudication of facts particular to any subset of the class nor require a remedy that differentiates materially among class members. *See Lemon v. Int'l Union of Operating Eng'rs*, 216 F.3d 577, 580 (7th Cir. 2000).[22] Accordingly, for the foregoing reasons, the Court certifies the putative classes pursuant to Rule 23(b)(2).[23]

## D. Conditional Nature of This Order

Pursuant to Federal Rule of Civil Procedure 23(c)(1)(C), "[a]n order that grants or denies class certification may be altered or amended before final judgment." The

---

[21] *Cf. Gooch*, 672 F.3d at 427 ("Of course, Rule 23(b)(2) certification remains available in other circumstances, including when the plaintiffs seek a declaration about the meaning of a contract.")

[22] As set forth above, the Court withholds judgment on whether the issue of prejudice will require individualized inquiry until the parties brief the issues on the merits.

[23] MPC also seeks certification pursuant to Rule 23(b)(1)(A) and (b)(1)(B). CIC also seeks certification pursuant to Rule 23(b)(1)(A) only. Because the Court certifies the defendant classes pursuant to Rule 23(b)(2), the Court need not decide whether the defendant classes could also be certified on these other grounds.

landscape of the Underlying Litigation continues to change. Further, while Dr. Durrani has indicated that he has no intention of further participation in the Underlying Litigation, some party may successfully compel him (or CAST, via a receiver) to provide testimony or some other assistance to the insurers. Accordingly, this Order is conditional in nature; the Court will not hesitate to either expand or contract the class definitions or to reconsider certification, upon a showing that such action is warranted.

## IV. CONCLUSION

Accordingly, for the foregoing reasons:

1. The Court **CONDITIONALLY GRANTS** Plaintiff Medical Protective Company's motion to certify a defendant class (Doc. 175) and certifies the following class:

   > Any "person" or "legal entity" who has, has had, or may have any "claim, cause of action, or judgment" against Durrani, CAST, or Medical Protective in or in connection with the "Underlying Litigation."

2. The Court **CONDITIONALLY GRANTS** Defendant/Cross-Claimant Cincinnati Insurance Company's motion to certify a defendant class (Doc. 192) and certifies the following class:

   > Any Person or Legal Entity who has, or has had, any claim, cause of action, or judgment against Durrani, CAST, or CIC in or in connection with the Underlying Litigation.

3. The Court hereby **APPOINTS** Crystal Pierce, Kelly LeMaster, Cathy Beil, Wayne Beil, JoAnn Frazier, Bill Frazier, West Chester Hospital, LLC, UC Health, Inc., Cincinnati Children's Hospital Medical Center, Good Samaritan Hospital, Christ Hospital, Inc., and Deaconess Hospital of Cincinnati as **class representatives**, and attorneys Robert Winter, Brian Goldwasser, David Kamp, David Olson, David Walulik, Jon Brittingham, Peter Georgiton, Michael Foley, Thomas Evans, Jennifer Mitchell, and Matthew Arend as **class counsel**.

**IT IS SO ORDERED**.


Date:  8/5/15                                                        *s/ Timothy S. Black*
                                                                     Timothy S. Black
                                                                     United States District Judge