UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| MEDICAL PROTECTIVE COMPANY,<br>    Plaintiff,<br>vs.<br><br>CENTER FOR ADVANCED<br>SPINE TECHNOLOGIES, INC., *et al.*<br>    Defendants. | Case No. 1:14-cv-05<br>Judge Timothy S. Black |

**ORDER RESOLVING MOTIONS FOR SUMMARY JUDGMENT,
DECERTIFYING DEFENDANT CLASS, AND DISMISSING THIS CASE
WITHOUT PREJUDICE**

This civil action is before the Court regarding the motions for summary judgment filed by various parties in this case. (Docs. 230, 233, 234). Responsive memoranda to these motions have been filed.

## I.    BACKGROUND

This case is one of many interrelated cases arising out of the conduct of Dr. Abubakar Durrani, a former orthopedic surgeon who operated in the Cincinnati/Northern Kentucky area. In 2012, allegations first surfaced that Dr. Durrani had knowingly recommended and performed unnecessary orthopedic surgeries on his patients for years in order to benefit financially. Based on these allegations and subsequent inquiry, hundreds of Dr. Durrani's former patients have filed lawsuits seeking damages for having been subjected to unnecessary surgeries. In addition to Dr. Durrani, many lawsuits have named other related entities as defendants, including the Center for Advanced Spine Technologies (CAST), a corporation solely owned and run by Dr. Durrani, the hospitals and surgical centers where surgeries were performed, and the manufacturers of the

1

medical devices used in the surgeries.

Separate from the rising tide of civil litigation against Dr. Durrani, a criminal investigation of him was also taking place around this time. On August 7, 2013, Dr. Durrani was indicted by the Grand Jury for the United States District Court for the Southern District of Ohio. Dr. Durrani was indicted on five counts of making false statements relating to health care matters in violation of 18 U.S.C. § 1035 and on five counts of health care fraud in violation of 18 U.S.C. § 1347. (Doc. 234-12). On October 16, 2013, a superseding indictment was returned bringing 36 counts against Dr. Durrani for making false statements relating to health care matters, health care fraud, devising a scheme to defraud healthcare benefits programs in violation of 18 U.S.C. § 1341, and illegally dispensing a controlled substance in violation of 18 U.S.C. § 841(a)(1) and (b)(1)(C). (Doc. 234-13).

Dr. Durrani's criminal case never made it to trial, however, because Dr. Durrani fled the United States for Pakistan in early 2014. Dr. Durrani has made it clear in communications with Plaintiff that he would not be returning to the United States to assist in preparation for and attendance at his trial(s). (Doc. 174-15). Civil trials have continued to proceed against Dr. Durrani and CAST in Dr. Durrani's absence, with several having already reached jury verdicts.[1]

---

[1] *See, e.g.*, *Pierce v. Durrani et al.*, Case No. A1200265 (Hamilton Cty. Ct. Common Pleas Feb. 19, 2014) (Plaintiff's verdict); *Marshall et al. v. Durrani et al.*, Case No. CV 2013 02 0524 (Butler Cty. Ct. Common Pleas) (defense verdict); *Martin v. Durrani et al.*, Case No. 2013 02 0522 (Butler Cty. Ct. Common Pleas) (defense verdict); *Kranbuhl-McKee et al. v. Durrani et al.*, Case No. 2013 02 0667 (Butler Cty. Ct. Common Pleas) (defense verdict).

Plaintiff in this case, Medical Protective Company, is an insurance company based in Indiana.  Plaintiff entered into contracts with Dr. Durrani and CAST to provide professional liability insurance for each entity.  One of the terms of these contracts is that the insured "shall at all times fully cooperate with [Plaintiff] in any claim hereunder and shall attend and assist in the preparation and trial of any such claim."  (*see. e.g.*, Doc. 174-6, at 4).  In accordance with these contracts, Plaintiff has retained counsel for Dr. Durrani and CAST in the civil litigation against them.

In light of Dr. Durrani's unwillingness to return to the United States to attend and assist in the trial against him and CAST, Plaintiff brought this civil action seeking a declaration from the Court that Plaintiff has no duty to defend and/or indemnify Dr. Durrani and/or CAST under their insurance policies for the underlying civil suits related to their alleged misconduct.  The most recent Amended Complaint contained class allegations,[2] and after briefing by the parties, the Court conditionally certified the following Defendant class on August 5, 2015:

> Any person or legal entity who has, has had, or may have any claim, cause of action, or judgment against Durrani, CAST, or Medical Protective in or in connection with the Underlying Litigation.

(Doc. 217, at 21).

---

[2] Cross-claimant Cincinnati Insurance Co. was also an insurer of Dr. Durrani and CASE and similarly moved for class certification on their own claims that Dr. Durrani and CAST violated their duty to cooperate under their insurance coverage.  (*See* Doc. 193, at 14–20).

3

There are three motions for summary judgment pending in this case. Plaintiff filed a motion for summary judgment requesting the Court to hold as a matter of law that Dr. Durrani's failure to cooperate in his defense forfeits his insurance coverage and relieves Plaintiff of any obligation to defend or indemnify Dr. Durrani or CAST in any of the underlying litigation related to Dr. Durrani's alleged misconduct. (Doc. 234). A group of Defendants who are alleged victims of Dr. Durrani's misconduct, and plaintiffs in civil cases against Dr. Durrani, have also moved for summary judgment, arguing for a ruling that Medical Protective Company's insurance policy is enforceable and covers their claims as plaintiffs in the underlying litigation. (Doc. 230). Finally, one Defendant in the present case, Crystal Pierce, has already received a favorable verdict against Dr. Durrani and CAST in state court, and her motion for summary judgment requests a ruling holding Plaintiff liable for the damages she has been awarded. (Doc. 233).

## II. STANDARD OF REVIEW

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the outcome of the action. *Celotex*, 477 U.S. at 323. All facts and inferences must be construed in a light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (1986).

### III. ANALYSIS

#### A. A showing of prejudice is required to void insurance coverage for noncooperation in Ohio.

The basis for Plaintiff's motion for summary judgment is that Dr. Durrani's failure to cooperate violated the terms of the insurance policies held by himself and CAST, voiding Plaintiff's obligation to defend or indemnify under the policy. One of the primary disputes between the parties in this case is whether an insurer must demonstrate that an individual's failure to cooperate in defending a claim was actually prejudicial to the defense of that claim before coverage may be voided.

Defendants argue that a showing of prejudice is required per Ohio law, pointing to an extensive body of case law from both Ohio state courts and federal courts interpreting Ohio law squarely holding that an insurer's coverage is only voided due to the insured's failure to cooperate if that lack of cooperation was actually prejudicial to the insurer's ability to defend the case.[3]

---

[3] *See, e.g.*, *Doerr v. Allstate Ins. Co.*, 121 F. App'x 638, 640 (6th Cir. 2005); *Park-Ohio Holdings Corp. v. Liberty Mut. Fire Ins. Co.*, 2015 WL 6661487, at *7 (N.D. Ohio Oct. 30, 2015); *Joseph v. State Farm Fire and Cas. Co.*, 2013 WL 663623, at *3 (S.D. Ohio Feb. 22, 2013); *Westfield Cos. v. O.K.L. Can Line*, 804 N.E.2d 45, 60 (Ohio 1st Dist. 2003); *Weller v. Farris*, 708 N.E.2d 271, 271 (Ohio 2nd Dist. 1998); *Templin v. Grange Mut. Cas. Co.*, 611 N.E.2d 944, 946 (Ohio 2nd Dist. 1992); *Gabor v. State Farm Mut. Auto Ins. Co.*, 583 N.E.2d 1041, 1043 (Ohio 8th Dist. 1990); *State Farm Mut. Auto Ins. Co. v. Holcomb*, 458 N.E.2d 441, 446 (Ohio 9th Dist. 1983).

Plaintiff argues that the Ohio case law developed over the last 30 years has been incorrectly decided, and that the Supreme Court of Ohio, as the final interpreter of Ohio law, has never required a showing of prejudice in a failure to cooperate case. Plaintiff cites a 1939 Supreme Court of Ohio case, *Luntz v. Stern*, 20 N.E.2d 241, 246–47 (1939), for the proposition that "[c]ooperation with the insurer is one of the conditions of the [insurance] policy and where there has been a failure to fulfill a condition upon which the obligation is dependent, the obligation ceases." Plaintiff's motion for summary judgment frames the issue as black and white—"once Durrani breached his duty to cooperate, coverage under the policies was forfeited as a matter of law." (Doc. 234, at 7). Plaintiff claims that all of the cases that have applied the prejudice standard in Ohio insurance cases have been offshoots of one Ohio appellate court case, *State Farm Mutual Auto Ins. Co. v. Holcomb*, 458 N.E.2d 441 (Ohio 9th Dist. 1983), that itself was contrary to the law as interpreted by the Supreme Court of Ohio. (Doc. 234, at 9–13).

However, the Supreme Court of Ohio has in fact ruled that an insured's failure to abide by the terms of an insurance contract's cooperation clause is not necessarily dispositive of the issue of whether the duty to cooperate has been breached. In *Weaver v. Ballard*, 186 N.E.2d 834 (Ohio 1962), an insured individual failed to appear at the trial in which he was a defendant. The Supreme Court of Ohio held that the insurance company still had the factual burden of demonstrating noncooperation by showing that "the particular circumstances did not justify the insured's failure to attend the trial." *Id.* at 838 (quoting 60 A.L.R. 2d 1153).

6

This Court sees the prejudice standard as articulated by *Holcomb* and every Ohio insurance case since then as compliant with the law as established in *Weaver*.  An insurer has a duty to demonstrate as a matter of fact that an insured's noncooperation was unjustified.  The prejudice standard is how Ohio law determines the issue of justification—an insured's failure to cooperate in litigation is unjustified (therefore meriting a declaration of non-coverage) if the failure to cooperate prejudices the insurer's ability to defend the case.

The case law in Ohio is clear on this point:  Every single court to interpret Ohio law, both state and federal, including district courts within this District and the Court of Appeals for the Sixth Circuit, has found for the last 30 years that prejudice must be demonstrated to void insurance coverage for lack of cooperation.[4]  This Court will not stray from that overwhelming precedent.  Accordingly, Plaintiff must demonstrate that Dr. Durrani's failure to cooperate has prejudiced their defense of claims against Dr. Durrani in order to void their insurance coverage.

### B. Prejudice is a factual determination to be made on a case-by-case basis.

The prejudice element of an insurer's cooperation defense presents an issue of fact. *See Weaver v. Ballard*, 186 N.E.2d 834 (Ohio 1962) (Syllabus 2) ("[O]rdinarily an issue of assistance and co-operation is question of fact to be determined by the jury from all of the evidence."); *Weller v. Farris*, 708 N.E.2d 271, 274 (Ohio 2nd Dist. 1998) ("prejudice resulting from an insured's failure to cooperate is an issue of fact"); *Costa v. Cox*, 155 N.E.2d 54 (Ohio 1958) (Syllabus 3) (finding prejudice to be an issue of fact

---

[4] *See supra* n. 3.

when an insured "leaves for parts unknown"). Indeed, the last two times the Supreme Court of Ohio has considered this issue, the syllabus holdings of those cases have made this point very clearly:[5]

> 2. Ordinarily an issue of assistance and co-operation is a question of fact to be determined by the jury from all the evidence.
>
> 3. Failure of the insured to appear at the trial is an important fact but is not necessarily conclusive of the issue of assistance and cooperation.
>
> 4. The burden of proving the defense of lack of assistance and co-operation rests on the insurer.

*See Weaver*, 186 N.E.2d 834 (Syllabus) (internal citation omitted).

> 2. Ordinarily an issue of assistance and co-operation is a question of fact to be determined by the jury from all the evidence.
>
> 3. Where an additional insured under the provisions of a liability insurance policy is involved in a collision and then leaves for distant parts unknown to the named insured, such facts do not per se constitute a lack of assistance and co-operation thereby relieving the insurer of the duty to defend, but it presents a question of fact for determination by the jury under all the circumstances.

*See Costa*, 155 N.E.2d 54 (Syllabus). In both cases, determining the issue of cooperation presents a question of fact.

These questions of fact relating to prejudice arising for noncooperation will be unique to each case, and therefore cannot be determined on a class wide basis.

---

[5] In Ohio, the syllabus of a Supreme Court of Ohio case is deemed to reflect the binding precedent of the opinion. *See Estate of Barney v. PNC Bank*, 714 F.3d 920, 925 (6th Cir. 2013) ("Generally, a syllabus cannot be cited as precedent; but, as the Ohio Supreme Court itself has stated, the opposite is true in Ohio: 'it is well-established that the syllabus of an opinion issued by this court states the law of the case.'" *Smith v. Klein*, 6 Ohio St.3d 16, 450 N.E.2d 1171, 1173 (1983). Accordingly, as the Supreme Court of Ohio has explained, the syllabus binds all lower Ohio courts 'to adhere to the principles set forth therein.' *Id.*").

At this point, the parties have not conducted any discovery as to the effect upon individual underlying cases that Dr. Durrani's absence has had on the proceedings or on the efforts that Plaintiff made to gain his testimony, assistance, or deposition. This absence may affect different cases in different ways depending on the underlying facts of each case and/or the timing of the trial(s). This truth is illustrated by the fact that a number of cases against Dr. Durrani and CAST have already reached a verdict—some in favor of the plaintiff and some in favor of the defendant.[6]

This Court follows the analysis outlined above in holding that the issue of whether Dr. Durrani's absence is in fact prejudicial to Plaintiff's defense of actions brought against him must be resolved by a finder of fact on a case-by-case basis. There has not been sufficient discovery on the prejudice issue in any particular case to rule at this time. Accordingly, this Court declines to grant summary judgment to any of the parties.

### C. Decertification of the Defendant class is appropriate.

Previously, this Court conditionally certified the following defendant class in this case:

> Any person or legal entity who has, has had, or may have any claim, cause of action, or judgment against Durrani, CAST, or Medical Protective in or in connection with the Underlying Litigation.

(Doc. 217, at 21). At the time, this Court stressed that "this Order is conditional in nature; the Court will not hesitate to either expand or contract the class definitions or to reconsider certification, upon a showing that such action is warranted." (*Id.* at 22).

---

[6] *See supra* n. 1.

The Court also stated in that Order that "at this juncture, the Court need not determine whether the issue of prejudice can be resolved on a class-wide basis." (*Id.* at 16).

The Court has now determined that prejudice is an issue that cannot be resolved on a class-wide basis, but, instead, must be determined in each case individually. *See supra* Part III.B. Prejudice is a determinative issue in deciding whether the insurance policies held by Dr. Durrani and CAST require the policy issuers to defend and indemnify Dr. Durrani and CAST in any particular case. *See supra* Part III.A. Accordingly, the questions raised regarding each of the class defendants no longer meet the commonality standard as required for class certification by Federal Rule of Civil Procedure 23(a)(2). It is therefore necessary at this time to decertify the defendant class so that the issues of cooperation and prejudice can be determined on an individual basis for each underlying action in which Dr. Durrani and/or CAST are defendants.

### D. This Court is an inappropriate forum for this insurance declaratory action.

The Sixth Circuit provides specific guidance to district courts faced with the decision of whether to hear a declaratory judgment claim. The Sixth Circuit has directed district courts to consider the following:

> (1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata[";] (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.

*Grand Trunk W. R.R. Co. v. Consol. Rail Corp.,* 746 F.2d 323, 326 (6th Cir.1984).

Given the Court's holding that the determinative issue of prejudice is a factual matter to be determined in each underlying case, an analysis of the *Grand Trunk* factors clearly indicates that this Court should decline jurisdiction over this action. No declaratory action by this Court would settle the controversy with respect to the hundreds of litigants suing Dr. Durrani and CAST who are not part of this action. A judgment in this case would not tend to clarify the legal relationships currently at issue in the underlying state actions, as Plaintiff is generally not a party to that litigation. *See U.S. Fire Ins. Co. v. Albex Aluminum, Inc.,* 161 F. App'x 562, 565 (upholding a finding that the second *Grand Trunk* factor was not met when the plaintiff's declaratory judgment action raised only issues of indemnity, which were not at issue in the underlying state court litigation). If this Court were to issue a declaratory judgment, such action would present undue friction with the state courts hearing the underlying litigation, as those courts are in a better position to evaluate the underlying factual issues that are vital to the decision of whether Plaintiff must insure Dr. Durrani and CAST. *See State Auto. Mut. Ins. Co. v. Cumberland Funeral Home, Inc.*, 2006 WL 1491060, at *3–4 (E.D. Tenn. May 30, 2006). And, most importantly in this case, there is a much more effective alternative—raising the issue of insurance coverage in each case in the underlying litigation, where the important factual distinctions of each case can be properly considered.

This Court therefore declines to exercise jurisdiction over Plaintiff's declaratory judgment action.

## IV. CONCLUSION

Accordingly, **IT IS HEREBY ORDERED THAT:**

1) All of the pending motions for summary judgment (Docs. 230, 233, 234) are **DENIED**;

2) The certification of the defendant class previously granted by this Court (*see* Doc. 217, at 22) is **REVOKED**.

3) This case is **DISMISSED** without prejudice.

The Clerk shall enter judgment accordingly, whereupon this case is **TERMINATED** in this Court.

**IT IS SO ORDERED.**

Date: 10/21/16                                                                                              *s/ Timothy S. Black*
                                                                                                            Timothy S. Black
                                                                                                            United States District Judge